IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

04 - 21144

CASE NO.:

# CIV - GOLD

Asociacion Nacional del Transporte Federal,
Estatal y Municipal de Pasajeros de la Republica
Mexicana, A.C. a Mexican corporation,
     Plaintiff.

MAGISTRATE JUDGE
SIMONTON

vs.

**RONNY J. HALPERIN, Esq.**, individually and
as a former partner in KLUGER, PERETZ, KAPLAN
& BERLIN, P.A., A Florida Professional Association,
**and RONNY J. HALPERIN, P.A.**, A Florida
Professional Association individually, and as a former
partner in KLUGER, PERETZ, KAPLAN & BERLIN, P.A.
and as a member in KLUGER, PERETZ, KAPLAN &
BERLIN, P.L., A Florida Professional Services Limited
Liability Company, and **KLUGER, PERETZ, KAPLAN
& BERLIN, P.A.**, A Florida Professional Association,
individually and as a member in KLUGER, PERETZ,
KAPLAN & BERLIN, P.L. and **KLUGER,
PERETZ, KAPLAN & BERLIN, P.L,** A Florida Professional
Services Limited Liability Company including Professional
Associations,
     Defendants.



_____/

## COMPLAINT

    Plaintiff, Asociacion Nacional del Transporte Federal, Estatal y Municipal de Pasajeros de la

Republica Mexicana, A.C., ("ANTFEM") a Mexican corporation, by and through its undersigned

counsel, sues the Defendants **RONNY J. HALPERIN, Esq.** ("HALPERIN") individually and as a

former partner in KLUGER, PERETZ, KAPLAN & BERLIN, P.A., a Florida Professional

Association, **RONNY J. HALPERIN, P.A.** ("HALPERIN, P.A.") individually and as a former



partner in KLUGER, PERETZ, KAPLAN & BERLIN, PA., A Florida Professional Association and

as a member in KLUGER, PERETZ, KAPLAN & BERLIN, P.L., A Florida Professional Services

Limited Liability Company, and **KLUGER, PERETZ, KAPLAN & BERLIN, P.A.** ("KPKB."), A

Florida Professional Association, individually and as a member in KLUGER, PERETZ, KAPLAN &

BERLIN, P.L. and **KLUGER, PERETZ, KAPLAN & BERLIN, P.L,** ("KPKB, P.L.") A Florida

Professional Services Limited Liability Company including Professional Associations, and states as

follows:

## PARTIES

1.      Plaintiff, ANTFEM, is a corporation, organized and existing under the laws of

Mexico and has its principal place of business in Puebla, Mexico.  It is a citizen of Mexico.

2.      Defendant, **HALPERIN**, is an attorney licensed to practice law in the State of

Florida and a citizen of the State of Florida, who at all material times herein was a partner in Kluger,

Peretz, Kaplan & Berlin, P.A. and was acting in behalf of the partnership and within the scope of its

business at the time and place of the incident described in this Complaint.  At all material times, this

Defendant exercised control over Defendant KPKB's Florida Bar Foundation, Inc., I.O.T.A. Trust

Account, including but not limited to the funds described below.  Further, this Defendant employed

the firm's trust account to collect monies from Plaintiff.

3.      Defendant, **HALPERIN, P.A.,** is and was at all material times a professional

service association, organized and existing under the laws of the State of Florida, having its principal

place of business in Miami, Florida and a member in Kluger, Peretz, Kaplan & Berlin, P.L., a

professional services limited liability company for the practice of law and accordingly this entity is

liable for the negligence of HALPERIN.  It is a citizen of the State of Florida.

4.     Defendant, **KPKB, P.A.,** is and was at all material times a professional service association, organized and existing under the laws of the State of Florida, having its principal place of business, a law firm, in Miami, Florida. HALPERIN and HALPERIN, P.A., at all material times herein, were entities responsible to Plaintiff, and members of KPKB, P.A. Accordingly, KPKB, P.A. is liable for the negligence of HALPERIN and HALPERIN, P.A. KPKB, P.A. is a citizen of the State of Florida.

5.     Defendant, **KPKB, P.L.** appears to be a professional services limited liability company including professional associations for the practice of law, and is either the alter ego of KPKB, P.A. and or a means to operate KPKB, of which HALPERIN and HALPERIN, P.A. at all material times were members thereof and an entity responsible to Plaintiff.  KPKB, P.L. was organized and existing under the laws of the State of Florida, and has its principal place of business, a law firm, in Miami, Florida.  It is a citizen of the State of Florida.

## JURISDICTION AND VENUE

6.     This is an action for damages in which the amount in controversy between the parties exceeds $75,000.00 exclusive of interest and costs and is between citizens of different countries.  Wherefore this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

7.     The United States Southern District of Florida is the proper venue to try this action, as Defendants are citizens of the State of Florida and maintain its law practice in Miami, Florida.

## FACTS

8.      ANTFEM is a non-governmental organization established in 1995 with fifteen

hundred to two thousand dues paying members.  ANTFEM represents its members in the public

transportation industry in Mexico.

9.      FERNANDO MIRÓN TERRÓN ("TERRÓN") is the president and representative

of ANTFEM and administers ANTFEM's financial matters.

10.     In an attempt to improve the enviroment, the Mexican government is demanding

the taxi and bus drivers upgrade their vehicles. .

11.     Since Mexico's financial crisis in 1994, Mexican banks have been very skeptical

about lending money.  ANTFEM was faced with the duty of complying with the Mexican

government's request and needed financing to upgrade it's vehicles.  ANTFEM attempted to obtain

financing for the new vehicles through foreign lenders.

12.     MONTAGE is and was at all material times hereto a Gibraltar corporation

purporting to focus on loan procurement and investment opportunities for international clients.

13.     MONTAGE at all material times hereto was a client of HALPERIN and KPKB.

14.     MONTAGE conducted business, at all material times, at the law offices of

KPKB.

15.     At all times material hereto HALPERIN and KPKB employed its trust account in

furtherance of MONTAGE'S dealings with Plaintiff.

16.     On June 30, 2000, MONTAGE memorialized a "**firm commitment to fund $455

Million USD [$455,000,000.00]**" for the upgrading of ANTFEM's taxi fleet (the "Project").  The

document is attached as Exhibit 1.

17.     MONTAGE advised ANTFEM in this document that it was necessary for ANTFEM to furnish MONTAGE with a **"refundable"** retainer of $100,000.00 in order for MONTAGE to begin steps to secure the loan of $455,000,000.00.

18.     ANTFEM accepted MONTAGE's proposal, and between June and July of 2000, furnished the entire retainer of $100,000.00. These funds (the "Funds") were wire-transferred into the trust account of KPKB.

19.     Notwithstanding Defendants' firm commitment to fund the $455 million, Defendants never presented Plaintiff with a bonafide loan commitment.

20.     The unrealistic attempt by MONTAGE to obtain the $455 million loan was eventually abandoned after the retainer of $100,000.00 was placed in KPKB's trust account.

21.     MONTAGE then represented to ANTFEM that it had the ability to secure a $24,000,000.00 USD loan commitment for the Project.

22.     On January 2, 2001, HALPERIN of KPKB sent a letter to TERRÓN and ANTFEM demanding $2,000,000.00 USD be funded for a Contingency Fund or MONTAGE would withdraw its new financing proposal for the Project.

23.     In or about January 2001, ANTFEM approached CARLOS MUSI ("MUSI") and AUTOTAL S.A. de C.V. ("AUTOTAL") and asked MUSI and AUTOTAL to fund the $2 million USD for the Contingency Fund.

24.     In or about January 2001, MUSI through AUTOTAL agreed to fund the $2,000,000.00 USD for the Contingency Fund.  ANTFEM agreed, upon funding of the $24,000,000.00 USD loan, AUTOTAL would receive $20,000,000.00 USD of the loan for supplying ANTFEM with Nissan vehicles for the Project.

25.     On April 11, 2001, HALPERIN of KPKB expressly solicited AUTOTAL for escrow services which included vouching for MONTAGE's reputation and competency and offered to receive and disburse loan proceeds.

26.     Prior to engaging KPKB and HALPERIN's escrow services, AUTOTAL through MUSI, ANTFEM through TERRÓN and MONTAGE through Germano Carreira negotiated the terms of their agreement in a Spanish document dated March 19, 2001. A copy of this document and its English professional translation are attached hereto as " Exhibit 2a and 2b.

27.     AUTOTAL through MUSI, ANTFEM through TERRÓN and MONTAGE through Carreira signed another agreement in the English language on March 20, 2001. A copy of this document is attached hereto as Exhibit 3.

28.     On or about April, 2001, HALPERIN of KPKB drafted an escrow agreement incorporating by reference the parties Spanish and English agreements and referred to same as the Documents.

29.     The Escrow Agreement was signed on April 16, 2001 as follows:  ESCROW AGENT:  KPKB by Halperin, partner; AUTOTAL by MUSI, CEO; and MONTAGE by Carreira, President & CEO.   AUTOTAL and MONTAGE together are referred to as Principals. ANTFEM and TERRÓN witnessed this agreement.  A copy of this document is attached hereto as Exhibit 4.

30.     MUSI procured a bank loan in Mexico on behalf of AUTOTAL for the sum of $2,000,000.00 USD and personally guaranteed same. $1,400,000.00 USD was eventually returned to the loan institution and was never tendered to the Defendants.

31.     MUSI and AUTOTAL funded the escrowed property referred to in the Escrow Agreement by check dated April 24, 2001 drawn on Ready State Bank signed by MUSI in the amount of $600,000.00 USD made payable to KPKB.  The receipt is signed "KPKB by Ronny Halperin for deposit into the KPKB escrow account.

32.     HALPERIN and KPKB charged a flat fee of $2000.00 USD for escrow services in the Escrow Agreement.

33.     At all material times hereto MONTAGE represented to TERRÓN, ANTFEM, MUSI and AUTOTAL it had the ability to secure financing of the $24,000,000.00 USD loan for the "Project".

34.     At all times material hereto HALPERIN and KPKB held themselves out as Florida attorneys with the competency to provide escrow services.

35.     ANTFEM, MUSI and AUTOTAL had the reasonable expectation HALPERIN and KPKB would hold the escrowed *Funds* until such time as a bonafide letter of commitment was issued by a financial institution located in the U.S. to ANTFEM for the principal amount of $24,000,000 USD to be closed within sixty (60) days of the commitment date for ANTFEM 's purchase of taxis for use in Mexico.

36.     In or about June 2001, HALPERIN met with MUSI and personally assured him that he was in possession of a bonafide "Letter of Commitment" from Kennedy Funding, Inc. of Hackensack, New Jersey.

37.     In or about June 2001, HALPERIN prepared a release for the Escrowed Property and assured MUSI and AUTOTAL that they would receive $20,000,000.00 USD of the proceeds of the loan within thirty (30) days. MUSI as CEO of AUTOTAL relied upon HALPERIN's representations and signed the release.

38.     On June 29, 2001, HALPERIN of KPKB informed TERRÓN and ANTFEM it had disbursed the amount of $600,000 **less the firm's fees in light of the fact that a funding commitment had been obtained from Kennedy Funding**.

39.     **A bonafide Letter of Commitment was never issued by** Kennedy Funding in accordance with the terms of the Escrow Agreement and The Documents.  Kennedy Funding, Inc.'s attorney has confirmed same in writing.

40.     $600,000.00 USD was disbursed by HALPERIN from the KPKB trust account to an **offshore** account located in the Isle of Man (outside the United States).  Furthermore, HALPERIN received large sums of money from MONTAGE **outside the U.S.A.** from the aforementioned disbursement.

41.     ANTFEM has not received **anything whatsoever** from HALPERIN or KPKB.

42.     The refundable retainer of $100,000.00 was never returned to ANTFEM.

## COUNT I - ACCOUNTING

43.     Plaintiff, ANTFEM, realleges paragraphs 1 through 42 and further alleges:

44.     Plaintiff has made a written demand for an accounting of the trust *Funds* and the reasons for the disbursement since Plaintiff received nothing in return for the $100,000.00 USD it deposited into KPKB's attorney trust account.

45.     Defendants have failed and have refused to properly account to Plaintiff for the monies deposited in their attorney trust account and the reasons for the disbursements.

46.     Plaintiff is entitled to the equitable remedy of an accounting due to the confidential and fiduciary relationship between Plaintiff and Defendants, and also due to the complicated nature of the transactions between Plaintiff and Defendants.

WHEREFORE, Plaintiff requests that an Order for an Accounting be entered against the Defendants in the amount of a sum certain, including the interest thereon, together with an award of reasonable attorneys fees pursuant to Florida Statute 57.105 and such other relief as the Court deems just and proper.

## COUNT II- BREACH OF FIDUCIARY DUTY

47.     Plaintiff, ANTFEM, realleges paragraphs 1 through 42 and further alleges:

48.     By acceptance of the *Funds* into KPKB's attorney trust account, HALPERIN of KPKB undertook a fiduciary duty to ANTFEM.

49.     HALPERIN of KPKB abused his fiduciary relationship to ANTFEM through either negligent or fraudulent conduct including but not limited to:

(a)     Participating in a sham transaction with his client MONTAGE and taking fees from the trust account for same;

(b)     Employing KPKB's trust account in furtherance of the scheme to defraud ANTFEM;

(c)     Misappropriating the trust *Funds* that were advanced for specific purposes;

(d)     Failing to provide ANTFEM with a full accounting of ANTFEM's trust *Funds*;

(e)     Failing to return ANTFEM's trust *Funds* that were deposited for specific purposes.

50.     As a direct and proximate result of the breaches aforesaid, ANTFEM has incurred financial losses and has been damaged.

**WHEREFORE**, Plaintiff ANTFEM demands judgment against the Defendants HALPERIN of KPKB for compensatory damages including prejudgment interest as allowed by law, post-judgment interest and costs. Additionally, Plaintiff requests attorney's fees pursuant to Florida Statute 57.105 and such other relief as the Court deems just and proper.

### COUNT III- NEGLIGENT BAILMENT

51.     Plaintiff, ANTFEM realleges paragraphs 1 through 42 and further alleges:

52.     Plaintiff delivered *Funds* to the Defendants' attorney trust account to be held in trust and a bailor/bailee relationship was created.

53.     By acceptance of the *Funds* into their sole, actual and exclusive possession, HALPERIN and KPKB as bailees and professional licensed attorneys undertook that duty of care of the *Funds* that a reasonably prudent person would bestow upon his own goods.

54.     HALPERIN and KPKB negligently breached that duty of care when transferring and disbursing the *Funds* from the KPKB trust account to MONTAGE and itself in violation of the terms of the document referred to in Exhibit 1.

55.     As a direct and proximate result of the negligent acts by HALPERIN and KPKB, ANTFEM was deprived of its assets and has suffered substantial financial damage and injuries.

**WHEREFORE**, Plaintiff ANTFEM demands judgment against the Defendants HALPERIN and KPKB for compensatory damages including prejudgment interest as allowed by law, post-judgment interest and costs. Additionally, Plaintiff requests attorney's fees pursuant to Florida Statute 57.105 and such other relief as the Court deems just and proper.

## COUNT IV – CIVIL CONSPIRACY

56.     Plaintiff, ANTFEM realleges paragraphs 1 through 42 and further alleges:

57.     Defendant, HALPERIN of KPKB conspired to enter into an illegal transaction with MONTAGE that both parties knew was adverse to the interest of ANTFEM and which was fraudulent.

58.     Defendant, HALPERIN of KPKB, agreed to receive *Funds* from Plaintiff and disbursed the *Funds* in KPKB's trust account to himself and MONTAGE for his own benefit, in furtherance of a scheme to defraud ANTFEM.

59.     By acting in concert, HALPERIN of KPKB and MONTAGE were able to disburse and deplete the *Funds* deposited by ANTFEM in KPKB's attorney trust account.

60.     As a result of the actions described in this Count, and elsewhere in this Complaint as stated above and reincorporated herein, ANTFEM was deprived of its assets and has suffered substantial financial damage and injuries.

**WHEREFORE**, Plaintiff ANTFEM demands judgment against the Defendant HALPERIN of KPKB for compensatory damages including prejudgment interest as allowed by law, post-judgment interest and costs. Additionally, Plaintiff requests attorney's fees pursuant to Florida Statute 57.105 and such other relief as the Court deems just and proper.

## COUNT V – UNJUST ENRICHMENT

61.     Plaintiff, ANTFEM realleges paragraphs 1 through 42 and further alleges:

62.     ANTFEM entrusted HALPERIN of KPKB with the sum of $100,000.00 USD to be held in trust and to be employed for specific purposes. By doing so, Plaintiff conferred a benefit upon Defendants, who had knowledge of the benefit.

63.     HALPERIN of KPKB disbursed these *Funds* to himself and MONTAGE in violation of the specific purposes.

64.     HALPERIN of KPKB voluntarily accepted and retained the benefit conferred upon him by ANTFEM and the circumstances are such that it would be inequitable for HALPERIN and KPKB to retain the benefit conferred upon him without paying the value thereof to ANTFEM.

65.     As a result of the actions described in this Count, ANTFEM has suffered substantial financial damage and injuries.

**WHEREFORE**, Plaintiff ANTFEM demands judgment against HALPERIN and KPKB for compensatory damages including prejudgment interest as allowed by law, post-judgment interest and costs. Additionally, Plaintiff requests attorney's fees pursuant to Florida Statute 57.105 and such other relief as the Court deems just and proper.

## VI-VICARIOUS LIABILITY

66.     Plaintiff, ANTFEM realleges paragraphs 1 through 65 and further alleges:

67.     At all times and places material to this action, HALPERIN was an agent or employee of HALPERIN, P.A., acting within the apparent course and scope of his authority and HALPERIN, P.A., is vicariously liable for all acts of HALPERIN committed within the course and scope of his agency or employment.

68.     At all times and places material to this action, HALPERIN was a partner of KPKB and KPKB, P.L. and was acting in behalf of the partnership and within the scope of the partnership's business at the time and place of the incident described in this Complaint. Therefore, KPKB and KPKB, P.L. are vicariously liable for all acts of HALPERIN committed in behalf of the partnership and within the scope of the partnership's business.

**WHEREFORE**, Plaintiff, ANTFEM demands judgment against Defendants HALPERIN, P.A., Kluger, Peretz, Kaplan & Berlin, P.A. and Kluger, Peretz, Kaplan & Berlin, P.L. for compensatory damages including prejudgment interest as allowed by law, post judgment interest and costs. Additionally, Plaintiff requests attorney's fees pursuant to Florida Statute 57.105 and such other relief as the Court deems just and proper.

Dated this _15th_ day of May, 2004.

The Whole Respectfully Submitted,


ROBERT H. DOLMAN, ESQ.
FLORIDA BAR NO: 350321
5550 NORTHEAST 33RD AVENUE
FORT LAUDERDALE, FLORIDA 33308
TEL:954.561.0655/FAX:954.689.3952

CHRISTOPHER POLE, ESQ.
FLORIDA BAR NO: 320226
633 SE 3rd AVENUE, SUITE 302
FORT LAUDERDALE, FLORIDA 33301
TEL: 954.728.8551/FAX: 954.764.4731

## EXHIBITS

| Exhibit | Content |
|---------|---------|
| 1 | A document dated June 30, 2000 on "Montage Holdings, LTD." letterhead employing the address of <u>Kluger, Peretz, Kaplan & Berlin at</u> 201 S. Biscayne Blvd., Suite 1700, Miami, Florida 33131 **"Re: $455 Million USD Funding"** signed by **Germano Carreira** on behalf of **Montage Holdings and Lic. Fernando Mirron Terron on behalf of A.N.T.F.** |
| 2a | A document written in Spanish dated March 19, 2001 signed by **Carlos Jorge Musi** on behalf of **Autotal C.A. de S.V., Fernando Miron Terron** on behalf of **Antfem** and **Germano Carreira** on behalf of **Montage Holdings**. |
| 2b | A document professionally translated to the English language of the Spanish document dated March 19, 2001. |
| 3 | A document written in English dated March 20, 2001 signed by **Carlos Jorge Musi** on behalf of **Autotal S.A. de CV, Fernando Miron Terron** on behalf of **Antfem**, and **Germano Carreira** on behalf of **Montage Holdings**. |
| 4 | The Escrow Agreement dated April 16, 2001 signed by **Ronny J. Halperin, Esq**. on behalf of **Kluger, Peretz, Kaplan & Berlin, P.A.** as **"Escrow Agent", Montage Holdings, Ltd.** (a Gilbratar corporation) as **"Principal"** and **Autotal, S.A. de C.V.** (A Mexico corporation) as **"Principal"**. |

Exhibit  1

# MONTAGE HOLDINGS, LTD.

**201 So. Biscayne Blvd., Suite 1700**
**Miami, Florida 33131**
**Tel. (305) 373-8861 & (305) 379-9000 Fax (305) 379-8702**

*[handwritten: Exhibit 1]*

June 30, 2000

*[handwritten: 1st loan, Montage uses law firm address]*

Lic. Fernando Miròn Terròn, President
Asociaciòn Nacional del Transporte Federal, Estatal y
Municipal de Pasajeros de la Repùblica Mexicana, A. C.
2 Sur No. 3916-7
Col. Huexotitla, C. P. 6420
Puebla, Puebla, Mèxico.

Re:     Financing for Purchase of 5,000 Hyundai Aero City 540 E E M Buses and
        5,000 Nissan Tsuru GS1 Taxis.  $455 Million USD Funding

Dear Lic Miròn Terròn,

Thank you for your visit to Miami, in response to and in pursuit of your very specific interests regarding the referenced project. We are, as previously mentioned, fully cognizant of the importance of public transportation to the Mexican society. It is our understanding, that the technology provided through the buses and taxis, subjects of this purchase, are part of a design to depollute living environments and to provide those dealing in the transportation of those requiring these services with a clean and conditioned environment. Which is essential for the quality and safety of the operators as well as the users. The *Asociaciòn Nacional del Transporte Federal, Estatal y Municipal de Pasajeros de la Repùblica Mexicana, A. C.*, (Hereafter addressed as A. N. T. F.). headquartered in Puebla, Mèxico, we are advised, has been engaged in the development of a multi-dimensional program which provides the proper functioning parameters for this ambitiously efficacious operation.

Our Vice President for marketing and project analysis, Mr. Otto J. Valdez, has notified me of the resulting conclusions and recommendations as it pertains to this loan request. It is my pleasure to inform you that the Mèxico Transportation Project has been deemed conceptually, economically and financially feasible as presented by your suppliers Bering-Hyundai Internacional S. A. de C. V. and Nissan Mexicana, S.A. de C.V. Therefore, pending the submission of the documents and information required of your Organization, we would be pleased to be engaged to provide the necessary capital ("Project Funding") to bring this project to fruition.

<u>You may regard this proposal as our firm commitment to fund $455 Million USD</u> for this project under the terms and conditions, which will be set forth herein.

Montage Holdings Ltd. ("Montage") - Montage, through its network of providers and lending institutions, will be providing Project Funding. Montage, along with its funding sources, very carefully structures the financing and disbursement of funds. The loan process will follow the steps as set forth below:

- The first step has already been taken. You have requested a funding of $455 Million USD and, through the good offices of your sellers, your request was accompanied by sufficient data for our personnel to commence our initial analysis of the Project.

- *The second step has also been completed. We have approved your project for funding and herein given a firm commitment for the funding of $ 455 Million USD.*

- *The third step is our engagement. Montage undertakes the funding of projects only when retained to do so. Our retainer is merely an estimate of out-of-pocket costs that we will incur during the funding process. Through long experience, and review of your project we have estimated that these costs will amount to $100,000 USD. The retainer is totally refundable at the time at which the Contingency Fund (described below) is returned to the Borrower. Montage will, at that time, absorb the fees originally satisfied from the escrowed amount deposited with its Attorneys in the United States.*

- *We then begin a collection of all the documents pertinent to the completion of the loan, including the actual detailed plans and a more comprehensive projection of costs. We also would like to examine any studies that you used to project costs and revenues, as well as permits, and legal and accounting validations. We must then verify the information. We build a file just as a Bank or any other Major Lender does, Once this file is complete, not exceeding 45 days, we then fund the loan in the manner required by and agreed with the sellers, as determined by the delivery schedules and capabilities. In its entirety, $455 Million USD.*

- *The loan proceeds will be disbursed directly to the sellers as invoiced and as reflected in the delivery and acceptance schedule evidenced in the Purchase Contract entered into by and between the Buyer and the Seller, under the supervision of Montage.*

- *These disbursements will be processed through a Bank of our choice and will be known as the Lending Bank. Typically, irrevocable pay orders will be lodged with the Lending Bank to assure no interruptions of the payment schedule.*

- *The Lending Bank will take a first lien position on the subject vehicles in order to provide sufficient collateral for the loan along with additional security described herein.*

*A funding of this size will take approximately 270 to 455 days to complete, or as required by the delivery and acceptance schedule evidenced in the Purchase Contract entered into by and between the Buyer, (Borrower) and the Seller, (Manufacturer's Rep.). Montage will provide this funding under the following approximate terms and conditions. (This information will be slightly repetitious but we feel it is better to be over-informed than under-informed.)*

*Total Amount of Funding - $ 455 Million USD*

*Term - Five, (5), years, for Buses and Four, (4), years for Taxis.*

*Contingency - A Contingency Fund equal to 10% of the purchase price of the buses and 15% of the purchase price of the taxis will be deposited in United States Dollars, in a Sub Account of the Master Account of Montage in the name of the Borrower/Depositor in Citibank/Shochet Securities for a period of time of 5 years and*

one day from the time of the initial disbursement to the Sellers. The amount, although equal to the 10% of the bus purchase price and 15% of the taxi purchase price, will require a minimum start up contribution of $15,000,000.00 USD. These moneys, that make up the Contingency Fund, will be returned to the Borrower/Depositor, including accumulated interest, (7% annualized), upon the successful conclusion of the repayment of the loan. The Borrower/Depositor agrees that the funds in the Contingency Fund Account are to be used in the event of a failure by the Borrower to make the required payments on a timely basis. Additionally, in the event that the Lender draws down the Contingency Fund for failure to make the required payment, the Borrower shall then replenish those funds within a 15 days period.

_Funding Schedule_ - The Project will be funded at the rate determined by the Sellers' delivery schedule and agreed-to timetable for receipt of the buses and taxis per month.

_Interest_ - Beginning two (2) months after the first disbursement of funds and thereafter, for the five (5) year term; the Borrower, through the daily collections and deposits into the "Fideicomiso", Trust (described below), will be obligated to pay Principal and Interest monthly at a rate not to exceed 8% (per cent) annually. These payments will be based on the amount actually disbursed to the Sellers, or its assigns, plus unpaid accrued interest.

_Disbursement_ - The loan documents will require a Fund Control Monitor Technical Committee, to insure progress and payment, will be required. A Mexican Bank will act as Trustee, "Fiduciario", responsible for administration, accounting and adherence to the Project's cost breakdown, verifying all payment reports, requests for loan disbursements accompanied by supporting invoices and releases, and to diligently maintain lender priority in payment disbursements and compliance in accordance with the "Fund Control" and loan documents. Funds not disbursed to the various operational sub accounts, and Lender repayment sub account, shall be maintained in an _immediately liquid account in the structure of the "Fideicomiso", Trust._

_Repayment of Principal_ - Principal amount of loan ($455,000,000), is repaid through the payment schedule submitted as _Amortization Schedule_ by **Montage**. The Borrower, will provide the Lender with acceptable evidence that all phases of the project comply with any and all Governmental and regulatory agencies requirements to render the project lawful and approved. The Loan will be all due and paid at the end of five (5) years or can be paid at any time during the five, (5) year period without penalty. (This loan is not assumable, nor may it be assigned without prior lender approval).

_Collateral_ - Borrower will provide a 10%, in the case of buses, and 15% in the case of taxis, Contingency Fund to be deposited into a Sub Account of the Master Account of Montage, in the name of the Borrower at Citibank/Shochet Securities. The principal sum, plus accumulated interest, will be returned to the Borrower through the "Fideicomiso", Trust. This refund, will take place five years and one day after the initial disbursement is made to the Sellers, or until the Borrower no longer has any indebtedness with the Lender, i.e., all of the obligations of the Borrower under the terms of this Financing have been totally satisfied. Typically, other collateral consists of a first lien position on the Titles to the Vehicles, ("Facturas"), Concessions, ("Concesiones"),

3

Tags, ("Plaças"), and Waiver of Rights Contracts, ("Acuerdos de Cesiòn de Derechos") and will be returned to the Borrower through the "Fideicomiso" or Trust.  And will become null and void at the time of satisfying the obligation in its entirety as related to the Lender.

Some of the costs incurred in the funding process and to which the retainer is applied are as follows:

<u>Legal</u> - Preparation of offering documents, contracts, loan documents, guarantees, collateral leasing documents, etc.; and, conforming all documents to the laws of the countries in which funds are being assembled.

<u>Accounting</u> - We generally will have an independent firm validate projections and other material included in the offering memorandum. This alone can be a sizable expense due to the size of the project.

<u>Miscellaneous</u> - Negotiations and preparation of contracts, Valuation Fees; and other incidental fees and expenses, including Commitment, Trustee and Collateral Trust Fees.

Our fees for the completion of the funding will be 1.25% of the amount funded to the Borrower, payable as your Sellers receive the funds. I.e., As you are funded over a period adhered to in the delivery schedule by your Sellers/suppliers. Montage will receive a total of 1.25% of the initial amount and 1.25% of each increment funded thereafter.

This proposal and agreement is subject to the rules of force majeure as set out by the International Chamber of Commerce (I.C.C.), Paris, France.  Should any act of God War, Insurrection or Civil Disobedience occur in any country in which this Agreement is being implemented in whole or in part, thereby, rendering performance by any or all parties impossible, then this agreement shall be deemed to be null and void.

Montage will expect the complete cooperation of the Borrower and its partners in providing us with information to be included in the offering documents or loan documents. Several days delay on the preparation side can result in a delay of several weeks on the funding side. We will expect a proper introduction to all personnel in your organization that may be helpful in providing answers or documentation needed to achieve our mutual goal.

To proceed with this funding under the terms and conditions as set forth above, please sign where indicated and return one (1) original and provide evidence of a Wire Transfer in the amount of $100,000.00 USD having been sent to the following coordinates:

MELLON UNITED NATIONAL BANK
DOWNTOWN BANKING CENTER
MIAMI, FL.
ABA# 067009646
FOR CREDIT TO:
KLUGER, PERETZ, KAPLAN & BERLIN, P. A.
ESCROW ACCOUNT
ACCT. # 0031135999
NOTIFY: MARIA MILIAN
TELEPHONE: (305) 371-2300

4

It is acknowledged herein that Borrower has manifested the issuance and transfer of $49,996.00USD to *Montage's* attorneys' Escrow Account as described above. It is further acknowledged that the Borrower is fully cognizant that before any formal agreement is entered into, all of the retainer shall be transferred to the Escrow Account of Kluger, Peretz, Kaplan & Berlin, P.A.

Our staff has been alerted and will begin the process upon receipt.

Sincerely,

Montage Holdings, Ltd.

By: _____

**Germano Carreira,**
**President & CEO**

Accepted by:

_____, on 05 day of July. 2000

*Lic. Fernando Miròn Terròn, President*
**A.      N.      T.      F.**

Witnessed by:

_____, on 20th day of June 2000

*Ing. Josè Ramòn Alonso Pujol*

5

Exhibit 2a

22 -MAR-01 09:54  From:+01+52356191
03/ 22/2001  09:39   9259257732      COEXA SA.CU   AUTOTAL SA +81+52  6191      PAGINA!  4

22 -MAR-01  12:22      COEXA SA.CU      +01+52356191        PAGINA  L

**Exhibit**
**2a**

19 de marzo de 2001

Sr. Germano Carreira
Financial Engineer
Mortage Holdings

Estimado Germano:

Antes que nada te mando un cordial saludo.

La presente es para resumir y concluir los acuerdos que discutimos y aprobamos previamente los días 15 y 16 del presente mes.

Quiero expresarte que el grupo Autotal sigue estando muy interesado en la realización de este proyecto dentro de un marco financiero, legal y operativo positivo y razonablemente seguro para todas las partes involucradas en el mismo.

El grupo Autotal tiene una larga experiencia en negocios internacionales en las ramas de comercio, industria, turismo, bienes raíces y agronegocios en el mercado de México por más de 40 años.

Es así, y retomando nuestras conversaciones te resumo la mecánica de instrumentación de la operación de Mortage-Antfam-Autotal.

Autotal

◆ Deposita $1,400,000.00 USD en el fondo de contingencia en Salomon Smith Barney con una carta de instrucción (afidávit), en la cual explique claramente que es un depósito a nombre del mismo y que pasara a nombre de la antfam en cuanto se libere y pague el crédito firmado entre Mortage y la antfam y que deberá ser pagado con orden de este último a Autotal, en caso de no realizarse este evento el depositario tendrá derecho de retirar dicho monto. El depósito de $ 1,400,000.00 a la cuenta de Salomon Smith Barney, será hecho inmediatamente después de recibir y firmar la carta de instrucciones (Afidávit) por parte de Mortage.

◆ Deposita $600,000.00 USD en el escrow account de Kluger, Peretz, Kaplan, & Berlin mediante la cual tenga como beneficiario a Mortage Holdings en cuanto cumpla con una carta de compromiso de un banco reconocido americano de proporcionar y cumplir un crédito hacia la antfam por $20,000,000.00 USD en un plazo no mayor de 60 días, en caso de no realizarse este evento el depositario tendrá derecho de retirar dicho monto.

( Se aclara que se firmara una carta compromiso, y no una carta de intención ya que el efecto formal y legal de la carta compromiso es mas seria y proporciona derechos al beneficiario inmediatamente)

KLUGER PERETZ KAPLAN, & BERLIN
**FILE COPY**

Exhibit 2a

Received: 22.Mar.01:09:57 AM  From: +01+52356191  To: 3058327753          Powered by GFax.com          Page: 5 of 5

**Antfim**

- Firmara una orden hacia Montage Holdings de pagar a Autotal el monto del crédito de $20,000,000.00 USD en su nombre y cuenta, quedando claro que Autotal recibe este dinero en nombre y cuenta de Antfim, sin que por ello le derive ninguna responsabilidad del crédito.

- Firmara un contrato de préstamo con Autotal por un monto de $2,000,000.00 mismo que amparara tanto los $1,400,000.00 del fondo de contingencia como los $600,000.00 del escrow account, que en caso de no realizarse por cualquier circunstancia o evento que impida el préstamo o pago del mismo hacia Autotal y aun otorgado la carta compromiso por parte del banco americano la Antfim liquidara el importe de los $600,000.00 dólares del escrow account.

**Montage Holdings**

- Gestionara una carta de compromiso por parte de un banco reconocido americano para otorgar un préstamo hacia la Antfim por $20,000,000.00 USD.

- Iniciara y otorgara un préstamo de $20,000,000.00 USD hacia la Antfim, misma que pagara a Autotal bajo cuenta y orden de la Antfim, motivo por el cual se realizara un deposito de $1,400,000.00 USD a cuenta de un fondo de contingencia que pasara a nombre de la Antfim al momento que Autotal reciba el monto del crédito descrito.

Sin mas por el momento nos despedimos, no sin antes ponernos a tus ordenes para cualquier aclaración adicional o duda.

Por parte de Autotal

Sr. Carlos Jorge Musi
Director General Autotal

Por parte de la Antfim

Sr. Fernando Miron Terron
Presidente

Por parte de Montage Holdings

Sr. Germano Carreira
Presidente & Ceo



KLUGER, PERETZ, KAPLAN, & BERLIN

FILE COPY

Exhibit 2b

2428 NE 8th. St.                                                    Pho     ax: (954) 563 6034
Ft. Lauderdale, FL 33304

## Patricia Dau
**Translator-Interpreter**
Spanish-English-German

 

# AFFIDAVIT OF TRANSLATION

STATE OF FLORIDA            )
                            ) S.S.:
COUNTY OF **BROWARD**        )

Patricia Dau, being duly sworn, deposes and says:

That she is a professional translator; that she is fully conversant with the English and Spanish languages; that she made the translation of the letter dated March 19, 2001 addressed to Montage Holdings, the document appended hereto, and that the translation is, to her best knowledge and ability, a true, accurate and correct translation of the document from Spanish into English.

_____
Patricia Dau

The foregoing instrument was acknowledged before me this 8 day of APRIL ,2003 by Patricia Dau, who is personally known to me and who did take an oath.

Notary Public

**Debra J. Day**
Commission # DD059896
Expires April 9, 2006
Bonded Thru
Atlantic Bonding Co., Inc.

*Exhibit 26*

Translation from Spanish into English

March 19, 2001

Mr. Germano Carreira
Financial Engineer
Montage Holdings

Dear Germano:

Let me begin by extending my sincere greetings to you.

This document is to sum up and conclude the agreement we had previously discussed and approved on the 15th and 16th of this month.

I wish to advise you that the Autotal group is still very interested in carrying out this project within a financial, legal, operational positive, and a reasonable secure margin for all the parties involved.

The Autotal group has a lengthy track record in international business transactions rooted in commercial, industrial, tourism, real estate, and agro-industries in Southeastern Mexico for more than forty (40) years.

Therefore, and according to our conversations, I sum up the mechanism to implement the Montage-Antfem-Autotal operation.

Autotal

- ♦   Shall deposit US$ 1,400,000.00 in the contingency fund at Salomon Smith Barney with a letter of instruction (Affidavit) that clearly explains that the deposit is under its own name and that it will be transferred to Antfem once the credit signed between Montage and Antfem has been released and paid and it shall be paid with orders of the latter to Autotal. In the event that this does not take place, the depositor shall have the right to withdraw the amount. The deposit of US$ 1,400,000.00 by Autotal into the account at Salomon Smith Barney shall be made immediately after receiving and signing the letter of instruction (Affidavit.)
- ♦   Shall deposit US$ 600,000.00 in an escrow account at Kluger, Peretz, Kaplan & Berlin with Montage Holdings as the beneficiary as soon as a letter of commitment from a large renowned American bank is executed providing a credit of US$ 20,000,000.00 within a period no longer than 60 days. In the event that this does not take place, the depositor shall have the right to withdraw said amount.

(It is understood that a letter of commitment and not a letter of intent shall be executed because the legal and formal effect of a letter of commitment is more serious and it provides immediate rights to the beneficiary)

KLUGER, PERETZ, KAPLAN, BERLIN
FILE COPY

Translation from Spanish into English

Antfem

- ♦    Shall sign an order directing Montage Holdings to pay Autotal the sum of the credit of US$ 20,000,000.00 in my name and account. It is clear that Autotal shall receive that money in the name and on account of Antfem and will not have any responsibilities for the credit derive from it.
- ♦    Shall sign a loan contract with Autotal for the sum of US$ 2,000,000.00 to cover the US$ 1,400,000.00 of the contingency fund as well as the US$ 600,000.00 of the escrow account. In the event that for whatever circumstance the loan or its payment to Autotal is not possible even if the American bank has granted the letter of commitment, Antfem shall liquidate the sum of US$ 600,000.00 of the escrow account.

Montage Holdings

- ♦    Shall arrange a letter of commitment by a renowned American bank granting a loan to Antfem for US$ 20,000,000.00.
- ♦    Shall initiate and grant a loan of US$ 20,000,000.00 to Antfem, which will be payable to Autotal on account and to the order of Antfem. Therefore, a deposit of US$ 1,400,000.00 shall be made in a contingency fund that will be transferred to Antfem as soon as Autotal receives the indicated amount of the credit.

For the time being that is all. Please contact us if you require any clarification or additional information.


On behalf of Autotal                              On behalf of Antfem
(L.S.) Carlos Jorge Musi                        (L.S.) Fernando Miron Terron
Autotal General Director                        President


                      On behalf of Montage Holdings
                      (L.S.) Germano Carreira
                      President & CEO


KLUGER, PERETZ,KAPLAN, BERLIN
FILE COPY

Exhibit   3

Received: 22.Mar.01 09:57 AM   From: +01+52956191   To:58327753                    Powered by eFax.com        Page: 2 of 5

22-MAR-01 09:52   019257732        COEXA SA.CU     +81+52         5191              PAGINA:  2
03/22/2001  89:39                              AUTOTAL SA DE CU                      PAGINA:

21-MAR-01 12:55   3053798782       COEXA SA.CU     +81+52354191                     PAGINA:  1
05/21/2001  12:56                              MONTAGE HOLDI+HG                      PAGE:    01

Exhibit ③

March 20, 2001

Mr. Germano Carreira
President & CEO
Montage Holdings

Dear Germano

This letter it's the summary and conclusion of the agreements that we discuss and approved previously on the 15 and 16 of this month.

I would like express that the Autotal group its still very interested in the making of this project in between a legal, operational, Financial frame and a reasonable secure for all the parts involved on it.

The Autotal group has a vast experience in international business like commerce, industry, tourism, real state and agroindustry in the southeast of Mexico for over 40 years.

After our conversation this is the way that the mechanics will work for the operation of Montage-Antfem-Autotal.

Autotal.

Autotal will deposit $1,400,000.00 US (one million four hundred thousand dollars) in a contingency fund in Salomon Smith Barney along with an affidavit in which clearly explains that the funds that will pass to the account of Antfem, as soon as the loan is disbursed and payment assignment directly to AUTOTAL has been accomplished. In the event that the funding does not take place, Autotal will have the right to withdraw the contingency fund of $1,400,000.00 USD from the account.

Autotal will deposit $600,000.00 US (six hundred thousand dollars) in a escrow account with Law Firm Kluger, Peretz, Kaplan, & Berlin. The beneficiary of the escrow account will be Montage Holdings, as soon as a letter of commitment from a US Financial Institution stating a commitment to fund $20,000,000.00 in a timeframe of 60 days is received for the amount of $20'000,000.00 US (twenty million dollars) in favor of Antfem. In the event that Montage Holdings fails to provide such commitment, Autotal will have the right to withdraw such amount.

We make clear that a letter of commitment and not a letter of intent will be signed as the legal effect of a letter of intent its very serious and gives the rights to the beneficiary immediately.

KLUGER, PERETZ, KAPLAN, & BERLIN
**FILE COPY**

Exhibit 3

To: 3058327753                          Powere. .y @eFax.com          Page: 3 of 5

COEXA SA.CV        +81+5;  3191              PAGINA:  3
AUTOTAL  SA DE CV

COEXA SA.CV        +81+32356191            PAGINA:  2
MONTAGE HOLDINGS                           PAGE   02

...ge Holdings to disburse the funds in the amount
...dollars) directly to Autotal without having any
...t

...tal for the amount of $2'000,000.00 US (two
...ount of $1,400,000.00 US (one million four
...he $600,000.00 (six hundred thousand dollars)
...event that for any circumstances the funding
...h after receipt of the letter of commitment from
...te the amount of $600,000.00 US (six hundred
...ount.


...t from a US Financial Institution to grant a loan to
...venty million dollars)

...of $20'000,000.00 US (twenty million dollars) t-
...ed directly to Autotal as instructed to Montage
...disbursement will be released directly to Autotal as
...oosited $1,400,000.00 US (one million four hundred
...gency fund account which will pass to Antfem's
...otal receives the complete amount of the funds.

...dditional information please contact us.

                                    Antfem

                          Mr. Fernando Miron Terron
                                  President


        Montage Holdings

        Mr. Gonzalo Carreira
        President & CEO


1, PERETZ, KAPLAN, & BERLIN

FILE COPY

Exhibit 4

Received: 22.Mar.01 09:57 AM   From: +01+523561b.   To: 3058327753        Power... .y @Fax.com        Page: 3 of 3

22-MAR-01 09:53        COEXA SA.CV      +01+52   3191        PAGINA: 3
03/22/2001  09:39   819257732          AUTOTAL SA DE CV

21-MAR-01 12:33        COEXA SA.CV     +01+32356191      PAGINA: 2
03/21/2001  14:56   3053798707         MONTAGE HOLDINGS               PAGE  02

## Antfem

Will provide instructions to Montage Holdings to disburse the funds in the amount of $20'000,000.00 (twenty million dollars) directly to Autotal without having any responsibility for the loan repayment.

Will sign a loan contract with Autotal for the amount of $2'000,000.00 US (two million dollars) which covers the amount of $1,400,000.00 US (one million four hundred thousand dollars) as well as the $600,000.00 US (six hundred thousand dollars) of the escrow account, that in the event that for any circumstances the funding cannot go throughout to Autotal even after receipt of the letter of commitment from American bank, Antfem will liquidate the amount of $600,000.00 US (six hundred thousand dollars) of the escrow account.

## Montage Holdings

Will obtain a letter of commitment from a US Financial Institution to grant a loan to Antfem for $20'000,000.00 US (twenty million dollars)

Will arrange and grant a loan of $20'000,000.00 US (twenty million dollars) to Antfem, which will be disbursed directly to Autotal as instructed to Montage Holdings by Antfem. The above disbursement will be released directly to Autotal as a result of them having had deposited $1,400,000.00 US (one million four hundred thousand dollars) in a contingency fund account which will pass to Antfem's account at the moment that Autotal receives the complete amount of the funds.

In case of any doubts or any additional information please contact us.

Autotal                                          Antfem

Mr. Carlos Jorge Musi                    Mr. Fernando Miron Terron
Autotal Director                              President

Montage Holdings

Mr. Germano Carreira
President & CEO

**KLUGER, PERETZ, KAPLAN, & BERLIN**

**FILE COPY**



# ESCROW AGREEMENT

**THIS ESCROW AGREEMENT** ("Escrow Agreement") is made and entered into this 16 th day of April, 2001, by and among Autotal, S.A. de CV, a Mexico corporation ("Autotal"), and Montage Holdings, Ltd., a Gibraltar corporation ("Montage"), and Kluger, Peretz, Kaplan & Berlin, P.A. (hereinafter referred to as "Escrow Agent"). Autotal and Montage together are hereinafter referred to as "Principals."

WHEREAS, Principals desire that Escrow Agent hold certain property as described on Exhibit "A" hereto ("Escrowed Property")

WHEREAS, Escrow Agent has agreed to act as escrow agent for the Escrowed Property on the terms and conditions now about to be set forth.

NOW, THEREFORE, in consideration of the covenants and agreements herein set forth and other good and lawful consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound, agree as follows:



I.    Escrow.

A.    Escrow Agent agrees to hold all of the Escrowed Property in escrow subject to the terms and conditions contained in this Escrow Agreement and the Documents, if any. The provisions of this Escrow Agreement shall control in the event of any conflict between the provisions hereof and the provisions of the Documents, if any. The provisions of the Documents, if any, to which this Escrow applies must be presented to Escrow Agent in the English language.



B.    Unless otherwise provided for in this Escrow Agreement or any addendum hereto, Escrow Agent shall disburse the Escrowed Property without interest or other accumulation in value.

C.    Escrow Agent shall not be deemed to have knowledge of any matter or thing unless and until Escrow Agent has actually received written notice of such matter or thing and Escrow Agent shall not be charged with any constructive notice whatsoever.



D.    In the event instructions from Principals would require Escrow Agent to expend any monies or to incur any cost, Escrow Agent shall be entitled to refrain from taking any action until it receives payment for such costs.

E.    Principals acknowledge and agree that nothing in this Escrow Agreement shall prohibit Escrow Agent from (1) serving in a similar capacity on behalf of others or (2) acting in the capacity of attorneys for one or more Principals in connection with any matter.

II.    Release of Escrow Property.

A.    Escrow Agent agrees to release the Escrow Property in accordance with the terms and conditions set forth in the Documents, if any, and this Escrow Agreement Specifically,

*Exhibit 4*

Escrow Agent shall hold the Escrow Property until Escrow Agent has been presented with a commitment letter from a financial institution located in the U.S. to ANTF for the principal amount of US$20,000,000 (Twenty Million U.S. Dollars) to be closed within sixty (60) days of the commitment date for ANTF's purchase of taxis for use in Mexico (the "Commitment"). If the Commitment is presented to Escrow Agent within sixty (60) days of deposit of the Escrow Property, Escrow Agent shall disburse the Escrow Property to Montage. If no Commitment is presented within sixty (60) days, Escrow Agent shall return the Escrow Property to Autotal.

B.    In the event Escrow Agent shall be uncertain as to its duties or rights hereunder or shall receive instructions, claims or demands from any Principals or from third persons with respect to the Escrowed Property or any other sums or things which may be held hereunder, which, in its sole opinion, are in conflict with any provisions of this Escrow Agreement and/or the Documents, if any, Escrow Agent shall be entitled to refrain from taking any action until it shall be directed otherwise in writing by all Principals and said third persons, if any, or by a final order or judgment of a court of competent jurisdiction.

C.    If all or any portion of the Escrowed Property delivered to Escrow Agent is in the form of a check or in any form other than cash, Escrow Agent shall deposit same as required but shall not be liable for the nonpayment thereof nor responsible to enforce collection thereof. If such check or other instrument other than cash representing the Escrowed Property is returned to Escrow Agent unpaid, Escrow Agent shall notify the applicable Principals for further instructions.

III.    Liability of Escrow Agent:

A.    It is agreed that the duties of Escrow Agent are purely ministerial in nature and shall be expressly limited to the safekeeping of the Escrowed Property and for the disposition of same in accordance with the Documents, if any, and this Escrow Agreement. Each Principal hereby indemnifies Escrow Agent and holds it harmless from and against any and all claims, liabilities, damages, costs, penalties, losses, actions, suits or proceedings at law or in equity, or any other expenses, fees, or charges of any character or nature, which it may incur or with which it may be threatened directly or indirectly arising from or in any way connected with this Escrow Agreement or which may result from Escrow Agent's following of instructions from Principals, and in connection therewith, indemnifies Escrow Agent against any and all expenses, including attorneys' fees and the cost of defending any action, suit or proceeding or resisting any claim, whether or not litigation is required. Escrow Agent shall be vested with a lien on all Escrowed Property held hereunder which is deliverable to Principals under the terms of this Escrow Agreement, for indemnification, attorneys' fees, court costs arising from any suit, interpleader or otherwise, or other expenses, fees or charges of any character or nature, which may be incurred by Escrow Agent by reason of disputes arising between Principals and/or any third party as to the current interpretation of this Escrow Agreement and/or the Documents, if any, and instructions given to Escrow Agent hereunder, or otherwise, with the right of Escrow Agent, regardless of the instruments aforesaid and without the necessity of instituting any action, suit or proceeding, to hold the Escrowed Property until and unless said additional expenses, fees and charges shall be fully paid.

B.    It is further agreed that Escrow Agent shall have the right to utilize the services of Kluger, Peretz, Kaplan & Berlin, P.A. as its attorneys and same shall not affect or in any way prejudice or limit Escrow Agent's entitlement to reasonable attorneys' fees for the services of such attorneys as set forth in this Escrow Agreement.

IV.   <u>Disputes.</u>

A.    In the event Escrow Agent is joined as a party to a lawsuit by virtue of the fact that it is holding the Escrowed Property, Escrow Agent shall, at its option, either (1) tender the Escrowed Property to the registry of the appropriate court or (2) disburse the Escrowed Property in accordance with the court's ultimate disposition of the case, and Principals hereby jointly and severally indemnify and hold Escrow Agent harmless from and against any damages or losses in connection therewith including, but not limited to, reasonable attorneys' fees and court costs at all trial and appellate levels.

B.    In the event Escrow Agent tenders the Escrowed Property to the registry of the appropriate court and files an action of interpleader naming the Principals and any affected third parties of whom Escrow Agent has received actual notice, Escrow Agent shall be released and relieved from any and all further obligations and liability hereunder or in connection herewith and Principals hereby, jointly and severally, indemnify and hold Escrow Agent harmless from and against any damages or losses arising in connection therewith including, but not limited to, all costs and expenses incurred by Escrow Agent in connection with the filing of such action including, but not limited to, reasonable attorneys' fees and court costs at all trial and appellate levels.

V.    <u>Terms and Agreement.</u>

A.    This Escrow Agreement shall remain in effect unless and until it is cancelled in any of the following manners:

(1)    Upon written notice given by all Principals of cancellation or designation of Escrow Agent to act and serve in said capacity, in which event, cancellation shall take effect no earlier than twenty (20) days after notice to Escrow Agent of such cancellation; or

(2)    Escrow Agent may resign as escrow agent at any time upon giving written notice to Principals of its desire to so resign; provided, however, that resignation of Escrow Agent shall take effect no earlier than ten (10) days after the giving of written notice of resignation; or

(3)    Upon compliance with all escrow provisions as set forth in this Escrow Agreement and in the Documents, if any.

B.    In the event Principals fail to agree to a successor escrow agent within the period described hereinabove, Escrow Agent shall have the right to deposit all of the Escrowed Property held hereunder into the registry of an appropriate court and request judicial determination of the rights between Principals, by interpleader or other appropriate action, and Principals hereby, jointly and severally, indemnify and hold Escrow Agent harmless from and against any damages or

losses in connection therewith including, but not limited to, reasonable attorneys' fees and court costs at all trial and appellate levels.

C.  Upon termination of the duties of Escrow Agent in either manner set forth in subparagraphs 1 or 2 of Paragraph A of this Article V, Escrow Agent shall deliver all of the Escrowed Property to the newly appointed escrow agent designated by the Principals, and except for rights of Escrow Agent specified in Paragraph A of Article III of this Escrow Agreement, Escrow Agent shall not otherwise have the right to withhold Escrowed Property from said newly appointed escrow agent.

D.  Escrow Agent shall not be bound by any modification, cancellation or rescission of this Escrow Agreement unless in writing and signed by all Principals and Escrow Agent. In no event shall any modification of this Escrow Agreement, which shall affect the rights or duties of Escrow Agent, be binding on Escrow Agent unless it shall have given its prior written consent.

VI.  Notices.



A.  All notices, certificates, requests, demands, materials and other communications hereunder shall be in writing and deemed to have been duly given (1) upon delivery by hand to the appropriate address of each Principal or Escrow Agent as set forth in this Escrow Agreement or in the Documents, if any, or (2) on the third business day after mailing by United States registered or certified mail, return receipt requested, postage prepaid to such address. All notices to Escrow Agent shall be addressed to the attorney signing on behalf of Escrow Agent at the following address:



> Ronny J. Halperin
> Kluger, Peretz, Kaplan & Berlin, P.A.
> 201 South Biscayne Boulevard
> 1700 Miami Center
> Miami, Florida 33131



VII.  Choice of Law and Venue.

This Escrow Agreement shall be governed by and construed in accordance with the laws of the State of Florida. In the event any action, suit or proceedings is instituted as a result of any matter or thing affecting this Escrow Agreement, the parties hereto hereby designate Miami-Dade County, Florida, as the proper jurisdiction and the venue in which same is to be instituted.

VIII.  Cumulative Rights.

No right, power or remedy conferred upon Escrow Agent by this Escrow Agreement is exclusive of any other right, power or remedy, but each and every such right, power or remedy shall be cumulative and concurrent and shall be in addition to any other right, power or remedy Escrow Agent may have under the Escrow Agreement or now or hereafter existing at law, in equity or by statute, and the exercise of one right, power or remedy by Escrow Agent shall not be construed or considered as a waiver of any other right, power or remedy.

- 4 -

IX.     Binding Agreement.

This Escrow Agreement shall be binding upon the Principals and Escrow Agent and their respective successors and assigns.

X.      Escrow Agent Fees.

Escrow Agent shall receive for its services in accepting this escrow the sum of $2000,00 USD Flat fee with respect to this escrow..

**IN WITNESS WHEREOF**, the parties hereto have caused these presents to be executed this 16 Th day of April 2001.

WITNESSES:                              ESCROW AGENT:

Signed, sealed and delivered            KLUGER, PERETZ, KAPLAN & BERLIN, P.A.
in the presence of:

_____                By: _____
Print Name_____                 Name: Ronny Halperin
                                        Title:   Partner
_____
Print Name_____


                                        AUTOTAL:

                                        AUTOTAL S.A. de CV

By: _____             By: _____
Name: Fernando Miron Terron             Name:       Carlos Jorge Musi
Title: President Antfem                  Title:         Ceo


                                        MONTAGE:

                                        MONTAGE HOLDINGS, LTD.

_____                 By: _____
Print Name Otto Valdes                  Name : Germano Carreira
                                        Title:   President&Ceo

- 5 -

## EXHIBIT "A"

### ESCROWED PROPERTY

Six Hundred Thousand United States Dollars (US$600,000.00)

::ODMA\WORLDOX\T:\3311\0001\M0031431.DOC

- 6 -

04-21144

# CIVIL COVER SHEET

§JS 44 (Rev. 3/99)

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Asociacion Nacional del Transporte Federal, Estatal y Municipal de Pasajeros de la Republica Mexicana, A.C., a

**DEFENDANTS** Halperin, Ronny J., Halperin, P.A., Kluger, Peretz, Kaplan & Berlin, P.A. and Kluger, Peretz, Kaplan & Berlin, P.L.

(b) County of Residence of First Listed Plaintiff  N/A
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed  BROWARD
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Date 04N 21144 / Gold / Simonton

CIV - GOLD

MAGISTRATE JUDGE SIMONTON

(c) Attorney's (Firm Name, Address, and Telephone Number)
← See attachment

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PLF | DEF |  | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

[nature of suit checkbox matrix — no marks]

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)
☒ 1 Original Proceeding

## VI. CAUSE OF ACTION
28 U.S.C. §1332. This is an action for an accounting, breach of fiduciary duty, negligent bailment, civil conspiracy, unjust enrichment and vicarious liability and damages resulting therefrom

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  DEMAND $ 100,000  JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY:
JUDGE _____ DOCKET NUMBER _____

DATE May 14/2004  SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY
RECEIPT # ___ AMOUNT ___ APPLYING IFP ___ JUDGE ___ MAG. JUDGE ___
$150.00  601340  05/14/04

Attachment to Civil Cover Sheet
Paragraph C

---

ROBERT H. DOLMAN, ESQ.
FLORIDA  BAR NO: 350321
5550 NORTHEAST 33RD AVENUE
FORT LAUDERDALE, FLORIDA  33308
TEL:954.561.0655/FAX:954.689.3952

---

CHRISTOPHER POLE, ESQ.
FLORIDA BAR NO: 320226
633 SE 3rd AVENUE, SUITE 302
FORT LAUDERDALE, FLORIDA 33301
TEL: 954.728.8551/FAX: 954.764.4731